**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICOH USA, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  20-4025 |
| | : | |
| INNOVATIVE SOFTWARE | : | |
| SOLUTION, INC., *et al.* | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                November 30, 2020

We enforce negotiated commercial agreements between businesses according to their terms.  A business seeking relief from its contract terms must allege facts supporting claims grounded in the contract unless it can plead a claim unrelated to the contract's terms and performance.  The business cannot create contract theories contradicted by their confirmed promises in written agreements.  We today review counterclaims brought by an equipment dealer against its supplier who is suing to collect on the parties' contracts.  The dealer attempts to plead the supplier breached written contracts directly contrary to the contracts' terms which it ratified in forbearance agreements.  The dealer claims fraud with no particularity which would allow us notice of a "fraud" which is not a contract claim.  The dealer's claims, particularly as to the effect of COVID-19 on its obligations and reasons for its non-performance on the contracts, are really defenses to the supplier's claims for payments due.  The dealer's guarantors plead no losses other than the losses allegedly suffered by the dealer. The dealer also asks for us to declare the supplier breached contracts but seeks relief duplicative of its flawed breach of written contracts claim. The supplier moves to dismiss these counterclaims.  The dealer and its guarantors elected not to respond to the supplier's motion to dismiss.  We grant the supplier's uncontested motion to dismiss the counterclaims without prejudice.

I.      **Alleged facts**[1]

Innovative Software Solution, Inc. agreed to act as a dealer of Ricoh USA, Inc. Lanier Brand equipment in South Florida in early 2018.[2]   In February 2018, Innovative officer Larry Frazier signed a personal guaranty to secure Innovative's eventual payment obligations to Ricoh before the parties formally entered into a dealer agreement.[3]

Innovative and Ricoh signed a Dealer Agreement on March 19, 2018 allowing Innovative to act as an authorized dealer of Ricoh, Lanier Brand equipment.[4]   Ricoh agreed to provide Innovative with a line of credit to fulfill equipment, repair parts, and supply orders at dealer prices.[5]   The parties agreed Ricoh could set interest rates on overdue accounts.[6]   The parties agreed Ricoh enjoyed "the right and sole discretion, for any reason, to accept or reject any order."[7]   The parties also agreed:

> . . . if [Innovative] fails to make any undisputed payment when due or payment of any invoice which, after investigation, Ricoh reasonably determines should be paid, or if Ricoh reasonably believes [Innovative's] creditworthiness is diminished, or otherwise deems itself insecure, Ricoh may, in its sole and absolute discretion:
>
> (a) Reduce, modify or eliminate [Innovative's] credit line with Ricoh; and/or
>
> (b) Decline to accept further orders from [Innovative] or to make further deliveries to [Innovative] until such deficiency is cured; and/or
>
> (c) Elect to make further deliveries only on a cash with order or cash on deliver basis; and/or
>
> (d) Require [Innovative] to provide adequate written assurance of [Innovative's] continued performance prior to making any further deliveries to or for the account of Dealer . . . [8]

Ricoh and Innovative also agreed to a *force majeure* clause excusing a default resulting from governmental acts or directives, or acts of God not within the reasonable control of the party affected.[9]

***Innovative agrees to manage services for school board in Summer 2018.***

A little over four months later, Innovative signed a Service Agreement with Lexmark, a company managing the print services for the School Board of Broward County, under which Innovative would obtain and service equipment necessary for Lexmark's contract with the School Board.[10]   Innovative contacted Ricoh to purchase 244 copiers needed for the Lexmark agreement financed by a $3.4 Million loan Innovative planned to obtain from Wells Fargo.[11] Ricoh refused to approve the equipment sale financed by Wells Fargo and instead financed the equipment for Lexmark itself through an equipment lease.[12]   In July 2018, Ricoh delivered a portion of the 244 copiers to Innovative, which Innovative kept in the warehouse before the copiers could be installed for the School Board.[13]

Two months later, Ricoh invoiced Innovative demanding installment payments under the Dealer Agreement due for July, August, and September 2018.[14]   Innovative had not yet received all of the equipment and had not installed or inspected any equipment.[15] Nor had Innovative sent a certificate of acceptance.[16] Innovative did not pay the invoice for the three installment payments.[17]

***Innovative signs 2018 Installment Agreement to pay for the services to the school board.***

In October 2018, Innovative signed a 2018 Installment Agreement for the 244 copiers necessary to satisfy its obligation to Lexmark and the Broward County School Board. Innovative officer Kashonda Burton and Natalie Frazier then signed personal guaranties with materially the same terms as the guaranty signed by Mr. Frazier eight months earlier.[18]   Ricoh countersigned the 2018 Installment Agreement on December 10, 2018.[19]   The 2018 Installment Agreement provided it would be binding upon Ricoh signing it.[20]   The parties also agreed Innovative's payment obligations began when Innovative signed a certificate of acceptance

within three days of Ricoh delivering the equipment delivered by Ricoh; they called this obligation the "Acceptance Date."[21]   The parties agreed the 2018 Installment Agreement constituted the full and complete agreement between them in connection with the delivery and payment for the equipment.[22]

Ricoh demanded installment payments from July 2018 through December 2018.[23] Innovative responded its obligation to make installment payments did not begin until Ricoh countersigned the 2018 Installment Agreement on December 10, 2018.[24]   Ricoh suspended Innovative's line of credit and refused to release orders until Innovative signed a forbearance agreement.[25]

### Ricoh agrees to forebear three times in seeking payment.

A month later in early 2019, Mr. Frazier signed the First Forbearance Agreement on Innovative's behalf.[26]   The parties agreed Innovative would pay the past due amount as of the date of the First Forbearance Agreement, and in return Ricoh would refrain from collection and foreclosure proceedings.[27] Ricoh told Innovative it would release orders as soon as Innovative posted the first scheduled payments.[28]   Innovative made their first scheduled payment under the First Forbearance Agreement on January 31, 2019.[29]   When Innovative contacted Ricoh asking when it would release the orders, Ricoh responded, "[a]ll additional orders will require full prepayment."[30]   Innovative alleges Ricoh never released the orders and stopped selling equipment to Innovative.[31]

But the following month, Innovative signed the 2019 Installment Agreement after placing more orders with Ricoh for additional equipment needed for its contract with the Broward County School Board.[32]   Innovative agreed to an additional financed amount for the equipment of $118,771.76 over thirty-six months.[33]   Aside from the additional equipment and financing, the

2019 Installment Agreement had materially similar terms to the 2018 Installment Agreement.[34] After Innovative continued defaulting on its payments under the 2018 and 2019 Installment Agreements, the Personal Guaranties, and the First Forbearance Agreement, Ricoh sent Innovative and its guarantors demand for payment.[35] Ricoh itemized Innovative's past due obligations and demanded immediate payment in full by June 2019 to avoid litigation.[36] Innovative continued to be in default of its obligations and did not pay in full by the date in Ricoh's demand.[37]  Ricoh did not immediately pursue litigation against Innovative and instead made another attempt to reconcile Innovative's debt.[38]

In October 2019, Ricoh and Innovative and its guarantors signed a Second Forbearance Agreement, under which Ricoh again agreed to forbear from collection proceedings in exchange for Innovative's timely monthly payments to pay its past and current obligations.[39]  The parties agreed Innovative owed $739,577.85 for defaulted obligations under the 2018 and 2019 Installment Agreements, the Personal Guaranties, and the First Forbearance Agreement.[40] Innovative agreed to pay $100,000 a month in exchange for forbearance.[41]  Innovative continued to tender late and incomplete payments from November 2019 to March 2020.[42]

Innovative stopped paying Ricoh entirely after March 2020 once the Broward County schools closed due to the COVID-19 pandemic.[43]  Ricoh continued to invoice Innovative while the Broward County schools remained closed from March 2020 to November 2020, holding it in default for unpaid installment payments.[44]  During this time, Ricoh invoiced Innovative for a balance of $648,052.80.[45]

Ricoh eventually sued Innovative and its three guarantors for breach of contract for failing to timely pay for $2.5 million worth of office equipment Ricoh provided Innovative.[46] The parties are proceeding in discovery to prepare for a March 24, 2021 non-jury trial.

Innovative and its guarantors now counterclaim for breach of contract, fraud, violations of Pennsylvania's Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law, tortious interference with prospective contractual relations, and declaratory judgment.[47] The guarantors allege they suffered financial harm and ascertainable loss associated with alleged debts in the amount of f $957,598.56.[48] Innovative allegedly suffered business losses.[49]

## II.    Analysis

Ricoh moves to dismiss Innovative and the guarantors' counterclaims.[50]  Ricoh argues Guarantors Burton, Frazier and Frazier lack standing to pursue the counterclaims, and Innovative fails to state a claim for: breach of contract; fraud; violations of the Pennsylvania's Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law; tortious interference with Innovative's prospective contractual relationship with Wells Fargo; and declaratory judgment.[51]  Innovative and the guarantors did not respond to Ricoh's arguments. We grant Ricoh's motion as uncontested under Local Rule 7.1(c), and alternatively, we grant Ricoh's motion on the merits.[52]

### A.    We grant Ricoh's motion to dismiss as uncontested.

Innovative neither responds to nor contests Ricoh's Motion to dismiss its counterclaims. Under Local Rule 7.1(c), "[f]ailure to respond to a properly filed motion within the time set forth in this rule permits the court to treat any motion as uncontested except as provided under Fed. R. Civ. P. 56."[53]  "When a party fails to respond . . . we may grant the motion [to dismiss] as uncontested."[54]

Ricoh moved to dismiss Innovative and the guarantors' counterclaims on November 9, 2020.  Innovative could respond until November 23, 2020.[55]  Innovative failed to respond to

Ricoh's motion.  Because Innovative failed to respond, we grant Ricoh's uncontested Motion to dismiss under Local Rule 7.1(c).

**B.      Neither the guarantors nor Innovative state a claim for which we may grant relief.**

Even if Innovative responded to Ricoh's motion, we would still dismiss Innovative's and the guarantors' counterclaims on the merits.  We dismiss the guarantors' claims because they lack standing to bring claims for harms suffered by Innovative.  Innovative failed to plead claims for breach of contract, fraud, a violation of the Pennsylvania Fair Credit Extension Uniformity Act, a violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, and tortious interference with contractual relations.  Innovative's declaratory judgment claim is duplicative of its breach of contract claims.

**1.      The guarantors cannot bring claims for Innovative's losses.**

The guarantors do not have standing to bring claims against Ricoh.  The Guarantors sue Ricoh for (1) breach of contract; (2) fraud; (3) violations of the Fair Credit Act (4) violations of the Trade Practices Act; (5) tortious interference with prospective contractual relations; and (6) declaratory judgment. Ricoh moves to dismiss the guarantors because they have not alleged harm distinct from Innovative.[56] We dismiss the guarantors' counterclaims seeking damages allegedly suffered by Innovative.  They may have a defense to Ricoh's claims against them but have not pleaded an affirmative claim for damages based on losses suffered by Innovative.

"It is well established that a stockholder, director, officer, or employee of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the individual because of an injury to the corporation."[57]  "It is generally accepted that guarantors of a corporation's debt, even if those guarantors are also stockholders, do not have standing to bring an action if the only harm suffered is derivative of the harm the

corporation suffered."[58] There are exceptions.[59] For example, an individual stockholder, officer, director, or employee of a corporation may plead an injury separate and distinct from that incurred by the corporation.[60]  An individual may bring a direct claim where "there is a special duty, such as a contractual duty, between the wrongdoer and the individual."[61] Most often, this exception applies when there is a fiduciary relationship.[62]

We are not aware of authority permitting the guarantors to sue Ricoh to recover for Innovative's alleged business losses.  We are aware of the great weight of authority suggesting they cannot sue Ricoh. Individual guarantors must show injuries separate and distinct from the debtor company. In *Phoenix Four Grantor Trust #1 v. 642 North Broad Street Associates*, the holder of two mortgages signed by two companies and guaranteed by two individual company partners sued both the companies and the individual guarantors for an outstanding debt.[63] The companies and the partners, as individual guarantors, brought counterclaims against the mortgage holder.[64] The mortgage holder then moved to dismiss the counterclaims of the individual guarantors for lack of standing.[65] The individual guarantors argued they had standing "as guarantors who suffered an injury that was separate and distinct from that suffered by the guaranteed entity."[66] Judge Yohn dismissed the individual guarantors' counterclaims as they "contain[ed] no allegation, nor can any reasonable inference be drawn, that [the individual guarantors] suffered damage other than as guarantors of [the debt]."[67] The individual guarantors never alleged specific harm to them, only alleging damage to all "Counterclaim Plaintiffs," including the companies.[68] As Judge Yohn explained, "counterclaim plaintiffs fail to explain what the separate and distinct injury was, fail to explain how it was separate and distinct, and fail to cite anything in support of the existence of a separate and distinct injury."[69]

We can also compare the guarantors' claims to those presented in *eds Adjusters, Inc. v. Computer Sciences Corp.* where a corporation and its president brought claims against another corporation for an intentional tort and breach of contract.[70] Under the intentional tort claim, the president alleged harm separate and distinct from the corporation because "the defendant's conduct necessitated that he fund [the corporation] with his own money and, as a result, his personal financial stability was jeopardized."[71] Judge Joyner found such a claim "does not constitute the required separate and distinct injury," and the damages enumerated by the president "are injuries sustained primarily by the corporation."[72] Judge Joyner also found the president can assert a claim under breach of contract because the agreement "specifically involved president individually as party to contract."[73] The agreement in *eds Adjusters, Inc.* specifically provided "this agreement contemplates the availability and participation of EDS Adjusters, Inc. representative, [the president], for primary direction and coordination of services performed hereunder."[74] Despite the president's allegations mirroring the corporation's harm, Judge Joyner found the president established a special relationship and  had standing under the breach of contract claim.[75]

The guarantors lack standing because they fail to demonstrate either separate and distinct harm or a special duty owed by Ricoh.  Like the guarantors in *Phoenix Four Grantor Trust #1,* the guarantors here do not allege separate injury distinct from Innovative's injury and instead attempt to show injury under an all-encompassing term, "Counterclaim-Plaintiffs."  The guarantors also fail to plead a special duty owed by Ricoh to them individually. Innovative does not plead, and we cannot find, a fiduciary relationship between them and Ricoh like the relationship in *eds Adjusters, Inc.*   While the guarantors may have a defense based on

impairment of collateral or other theories, we need not evaluate the validity of defenses today, and they lack standing to assert the affirmative claims for relief.[76]

### 2. Innovative does not plead a breach of contract claim.

Innovative alleges several theories for damages under the catch-all " breach of contract." None of the plead theories can proceed. Innovative alleges Ricoh breached the Dealer Agreement by: (1) "suspending Innovative's line of credit, refusing to release equipment orders, parts and supplies until Innovative agree[d] it was in default of the 2018 Installment Agreement and sign[ed] a forbearance agreement"; and (2) demanding payment during the COVID-19 pandemic under the *force majeure* clause. Innovative alleges Ricoh breached the 2018 Installment Agreement by invoicing and demanding payment before the agreement became binding. Innovative seems to argue Ricoh breached an agreement not yet in existence. Innovative also claims breach of an unspecified contract by Ricoh's interference with Innovative's possible financing with Wells Fargo. Ricoh moves to dismiss all four breach of contract theories. While the facts Innovative identifies may give rise to valid defenses, they do not support an affirmative counterclaim for breach of contract.

### a. Innovative fails to plead Ricoh breached the Dealer Agreement.

Innovative fails to plead Ricoh breached the Dealer Agreement. Innovative argues Ricoh breached the Dealer Agreement: (1) by suspending Innovative's line of credit, refusing to release equipment orders, parts and supplies until Innovative agree[d] it was in default of the 2018 Installment Agreement and sign[ed] a forbearance agreement"; and (2) by continuing to invoice Innovative after the COVID-19 pandemic in violation of the *force majeure* clause.[77] To plead a breach of contract claim under Pennsylvania law, Innovative must plead, "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and

(3) resultant damages."[78]  Innovative cannot identify a breach of a duty imposed by the Dealer

Agreement because Ricoh had the right to refuse to release equipment orders, and the *force*

*majeure* clause did not impose any duties on Ricoh.

Ricoh could not breach the Dealer Agreement by withholding orders because the Dealer

Agreement gave Ricoh the right to suspend lines of credit, refuse orders, and withhold deliveries.

Although we accept facts Innovative alleges as true at this stage, "[i]t is a well-settled rule that

when a written instrument contradicts allegations in the complaint to which it is attached, the

exhibit trumps the allegations."[79]  Innovative's claim is contradicted by two clauses in the Dealer

Agreement evidencing Innovative's consent to this conduct.  In Section 6(a), Innovative agreed:

"Ricoh shall have the right and sole discretion, for any reason, to accept or reject any order."[80]

In Section 10, Innovative agreed:

> . . . if [Innovative] fails to make any undisputed payment when due or payment of
> any invoice which, after investigation, Ricoh reasonably determines should be
> paid, or if Ricoh reasonably believes [Innovative's] creditworthiness is
> diminished, or otherwise deems itself insecure, Ricoh may, in its sole and
> absolute discretion:
>
> (a) reduce, modify or eliminate [Innovative's] credit line with Ricoh; and/or
>
> (b) decline to accept further orders from [Innovative] or to make further deliveries
> to [Innovative] until such deficiency is cured; and/or
>
> (c) elect to make further deliveries only on a cash with order or cash on delivery
> basis; and/or
>
> (d) require [Innovative] to provide adequate written assurance of [Innovative's]
> continued performance prior to making any further deliveries to or for the
> account of Dealer . . . [81]

Innovative agreed Ricoh enjoyed the absolute discretion to suspend Innovative's line of

credit, refuse orders, and withhold deliveries.[82]  Yet Innovative now claims the exercise of this

discretion breached the Dealer Agreement.[83]  Innovative admits giving Ricoh the authority to

accept or reject orders and suspend lines of credit.   Innovative offers no response to the unambiguous grant of this authority to Ricoh.   We dismiss this aspect of the breach of contract claim with leave to amend.

Nor did Ricoh breach the Dealer Agreement by continuing to invoice Innovative in light of the COVID-19 pandemic because the *force majeure* clause does not impose a duty on Ricoh. Innovative alleges Ricoh breached the *force majeure* clause of the Dealer Agreement by invoicing $648.052.80 during the time authorities closed the Broward County schools to mitigate the COVID-19 pandemic.   While a *force majeure* clause may provide a defense to a claim of breach or non-performance, it does not provide a claim for affirmative relief.   We dismiss this contract claim seeking relief.

The Dealer Agreement contains a *force majeure* clause, which provides:

> Neither Ricoh nor [Innovative] shall be in default of any obligation hereunder if such default results from governmental acts or directives, nonperformance or delay of a supplier to Ricoh, acts of God, war, riot, terrorist acts, strikes or other labor unrest which are not within the reasonable control of the party affected.[84]

A *force majeure clause*, like this one, allocates the risk of loss "if performance becomes impossible or impracticable," especially as a result of an event or effect the parties count not have anticipated or controlled.[85]   The clause generally lists a series of events such as earthquakes, storms, floods, natural disasters, wars, or other 'acts of God' which the parties to a contract have agreed upon as excuses of *non-performance*."[86]   "A claim of *force majeure* is equivalent to an affirmative defense."[87]   The *force majeure* clause in the Ricoh Dealer Agreement excuses performance of the parties' obligations if non-performance results from specified events; it does not create a cause of action for breach of contract if a party continues to operate as if the specified events did not occur. Innovative argues Ricoh's continued invoicing while schools closed due to the COVID-19 pandemic breached the clause.   It does not.

We are not aware of authority in which a judge found a *force majeure* clause gives rise to an affirmative claim for breach of contract.  It is an affirmative defense to Ricoh's case, as arguably pleaded in paragraph 78 of Innovative's Answer. We decline to determine whether the school closing due to the COVID-19 pandemic fell within the specified events as discovery will allow a fulsome record on the validity of this defense.

> **b.  Innovative fails to plead Ricoh breached the 2018 Installment Agreement.**

Innovative fails to plead Ricoh breached the 2018 Installment Agreement by invoicing and demanding payments from July through December 2018 because the 2018 Installment Agreement did not define parameters for invoicing.  Innovative argues Ricoh breached the installment agreement by invoicing Innovative before Innovative's duty to pay arose under the agreement.  Innovative cites two portions of the 2018 Installment Agreement in support of its claim: (1) a clause confirming payment will begin on the Acceptance Date of the Equipment with Innovative required to return a certificate of acceptance withing three business days of delivery and acceptance of the equipment;[88] and (2) a clause confirming the agreement is binding upon Ricoh's countersigning.[89]  Innovative argues Ricoh breached the 2018 Installment Agreement by invoicing Innovative before Ricoh countersigned the agreement on December 10, 2018.[90]  Ricoh argues nothing in the 2018 Installment Agreement prevented it from issuing invoices because the Installment agreement "is silent as to the time, manner, or frequency of invoicing."[91]  We agree with Ricoh.

While the clauses Innovative identifies may support an argument Innovative had no duty to pay until Ricoh signed the 2018 Installment Agreement or Innovative accepted the equipment, they do not support a claim Ricoh breached the 2018 Installment Agreement by invoicing Innovative because the parties did not agree on the time for invoicing.  Innovative fails to plead a

13

duty Ricoh breached by invoicing and demanding payment.  Because Innovative fails to plead a contractual obligation Ricoh breached under the 2018 Installment Agreement, we dismiss this part of their breach of contract claim with leave to amend.

> **c.    Innovative fails to plead Ricoh breached an agreement by allegedly interfering with Innovative's financing through Wells Fargo.**

Innovative fails to plead Ricoh breached a contract by interfering with Innovative's attempt to seek outside financing from Wells Fargo because Innovative cannot identify any contract between Ricoh and Innovative prohibiting the alleged interference.  Innovative alleges Ricoh's alleged interference with its prospective financing with Wells Fargo to purchase 244 copiers from Ricoh breached an agreement, without specifying which agreement Ricoh breached.  Innovative alleges it secured $3.4 million in financing from Wells Fargo, but Ricoh insisted Innovative finance the sale through a $2.5 million line of credit from Ricoh. Even accepting these facts as true, Innovative fails to state a breach of contract claim.

To plead a breach of contract claim, Innovative must first identify the existence of a contract and its essential terms, and then plead the duty imposed by the agreement. It fails to plead either of these essential requirements.  At the bare minimum, it does not identify which of the several agreements between the parties Ricoh breached.[92]  Innovative again fails to allege facts to plead a claim plausible on its face for a breach of contract. We dismiss this part of its breach of contract claim with leave to amend.

> **3.    Innovative fails to plead a fraud claim.**

We dismiss Innovative's fraud claim because Innovative fails to plead fraud with particularity under Rule 9(b).  To state a claim for fraud under Pennsylvania law, Innovative must plead:  "(1) a representation; (2) which is material to the transaction at hand; (3) made

falsely, with knowledge of its falsity or recklessness as to whether it is true of false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."[93]  Fraud claims are subject to a heightened pleading standard under the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[94]  Our Court of Appeals has explained, "a plaintiff alleging fraud must state the circumstances of fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged."[95]  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."[96]

In six brief paragraphs, Innovative attempts to plead a fraud claim.[97]  Innovative alleges two potential "misrepresentations":  (1) Ricoh "fraudulently induced Innovative to believe" Ricoh owed "monthly installment payments" in the amount of $309,545.76; and (2) "fraudulently induced Ricoh to believe it was required to pay amounts . . . , by withholding orders of equipment, parts and supplies necessary for Innovative's business operations."[98]  Innovative alleges it justifiably relied on these "misrepresentations," and "as a result of that justifiable reliance, Innovative was required to enter into the First Forbearance Agreement and assumed $309,545.76 of debt."[99]  Innovative alleges its "suffered consequential damages" because it must pay interest on this debt.[100]  Innovative's allegations do not meet Rule 9(b) muster.

With regard to the $309,545.76 in monthly installment payments, the alleged "misrepresentation" appears to be the invoices Ricoh sent Innovative between July 2018 and

December 2018.  Innovative characterizes these invoices as "fraudulent" because Ricoh issued them before the payments became due.[101]  Innovative does not argue the amount listed on the invoices are incorrect in light of the amount of equipment Ricoh delivered to Innovative. Innovative does not explain how an early invoice amounts to a knowing, false, and material misrepresentation.  Innovative alleges elsewhere "Innovative immediately contacted Ricoh to dispute incorrect [sic] invoice, based on the lease term start date."[102]  This admission Innovative believed the invoice to be incorrect undercuts its argument it "justifiably relied" on the allegedly incorrect invoice.

With regard to the allegation Ricoh "fraudulently induced Ricoh to believe it owed" other unspecified amounts by withholding orders, Innovative does not plead or now explain how withholding orders would amount to a "misrepresentation," and we cannot conceive of a possible explanation.  This allegation falls far short of the Rule 9(b) standard of specifically pleading facts supporting a fraud claim.  As Innovative does not plead fraud with particularity, we do not address Ricoh's entire agreement clause, gist of the action, and ratification arguments.

### 4. Innovative fails to plead claims under the Fair Credit Act and the Trade Practices Law.

Innovative cannot state a claim under the Pennsylvania Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection law because the transactions at issue were business transactions.[103]  Innovative alleges Ricoh violated the Pennsylvania Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law "by and through the following actions, *inter alia:* (a) Using unfair and unconscionable collection methods; (b) Giving a false impression of the character, amount or legal status of the alleged debt; (c) Using false and deceptive collection methods; (d) Making and/or taking illegal action;

and (e) Otherwise using false, deceptive, misleading, and unfair and unconscionable means to collect and/or attempt to collect a debt."[104]

### a.    There is no Fair Credit Act claim in a business transaction.

Innovative lacks standing to bring a private cause of action under the Fair Credit Act. Innovative alleges Ricoh sent communications "to collect debts associated with the 2018 Installment Agreement, 2019 Installment Agreement, First Forbearance Agreement, Second Forbearance Agreement, and Guarantee Agreement."[105]  It alleges Ricoh's communications violated the Fair Credit Act because the communications sought to collect installment payments "which were/are not due and owing by virtue of the 2018 Installment Agreement and Dealer Agreement, *force majeure* clause."[106]  Innovative alleges Ricoh is a "debt collector" or "creditor" under the Fair Credit Act and attempted to collect a "debt" as defined by the Act.[107] Ricoh argues these claims must be dismissed because (1) Ricoh is not a "debt collector" as defined by the Act; and (2) there is no private right of action to enforce the Fair Credit Act absent a successful claim for breach of the catchall provision of the Trade Practices Law, and these parties lack standing under the Trade Practices Law for this commercial obligation.[108]  We agree and dismiss the Fair Credit Act claim.

The Generally Assembly "does not provide individuals with the right to institute private causes of action" under the Fair Credit Act. [109]  Instead, Innovative may only obtain under the Fair Credit Act through the remedial provision of the Trade Practices Law. [110]  We thus construe Innovative's Fair Credit Act claim as a claim under the remedial provision of the trade practices law.  To sustain a claim under the remedial provision of the Trade Practices Law, the debt at issue must be one primarily for personal, family or household purposes.[111] Here, the debt at issue is a business, not a personal, debt.  Thus, Innovative lacks standing under the Trade Practices Law and the Fair Credit Act.

Under the Fair Credit Act, the General Assembly defined "debt" as "[a]n actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer to pay money, arising out of a single account as a result of a purchase, lease or loan of goods, services or real or personal property for personal, family or household purposes or as a result of a loan of money or extension of credit which is obtained primarily for personal, family or household purposes, provided, however, that money which is owed or alleged to be owed as a result of a loan secured by a purchase money mortgage on real estate shall not be included within the definition of debt."[112]

The General Assembly plainly requires a debt be primarily from a personal, family, or household purchase. It does not apply to business transactions.[113] In *Ocasio v. Ocwen Loan Servicing, LLC*, a borrower obtained a loan secured by a mortgage for a real estate purchase.[114] The mortgage settlement statement lists both the individual borrower and a beauty salon as the borrower of the loan.[115] The borrower signed the promissory note as "Individual and Proprietor" of the beauty salon.[116] The borrower sued the lender under the Fair Credit Act alleging it "communicated with the plaintiff in an attempt to collect a debt and did so using unfair and unconscionable collection methods."[117] Judge Bartle entered summary judgment on the Fair Credit Act claim for the lender, citing the General Assembly's definition of "debt" and finding "[n]o reasonable jury could draw an inference from the meager information before us that the loan was obtained primarily for "personal, family or household purposes."[118]

In *Hinchliffe v. Option One Mortgage Corp*, a borrower obtained a loan to maintain and improve rental properties.[119] Borrower secured the loan with a mortgage on the property, which served as a rental property and as the borrower's principal residence.[120] After closing on the loan, the borrower filed a Fair Credit Act claim against the lender.[121] On summary judgment, the

lender argued the borrower cannot bring a claim under the Fair Credit Act because the borrower entered into the loan for the purpose of financing his business, and the Fair Credit Act does not apply to business transactions.[122] The borrower argued he entered into the loan for personal, family, or household purposes because he secured the loan with his principal residence.[123] Judge Savage confirmed the Fair Credit Act does not apply to business transactions and explained "in determining whether the loan qualifies for . . . protection, the focus is not on the nature of the property securing the loan, but on the use of the loan proceeds."[124] Judge Savage granted summary judgment in favor of the lender, reasoning the loan proceeds primarily served the borrower's business purposes considering the borrower invested in properties for a living and the borrower residing in a part of a predominantly commercial property did not make the mortgage loan a personal loan.[125]

We do not need discovery to confirm the business purposes of this financing. Ricoh did not attempt to collect a debt from Innovative as defined by the General Assembly in the Fair Credit Act. The alleged debt Ricoh sought to recover associated with the 2018 and 2019 Installment Agreements, First and Second Forbearance Agreements, and Guarantee Agreements did not arise out of a primarily personal, family, or household purpose. Innovative admits the purpose of the debt related to financing equipment to support its contractual obligations to Lexmark and the Broward County School Board. This case involves a business transaction between Ricoh and Innovative where Innovative purchased Lanier brand products from Ricoh. Innovative entered into the agreements with Ricoh for the purpose of fulfilling another business transaction with Lexmark. Since the alleged debt undisputedly arises from a business transaction, and the Fair Credit Act does not apply to business transactions, we must dismiss this claim.

**b.      Innovative lacks standing to bring a Trade Practices Law claim.**

We dismiss Innovative's remaining claims under the Trade Practices Law.  In addition to alleging Fair Credit Act claims under the remedial provision of the Trade Practices Law, Innovative alleges Ricoh engaged in the following "unfair or deceptive acts and practices"*:* (a) "misrepresent[ing] to Innovative and its guarantors the character, extent, or amount of the debt or its status in a legal proceeding;" (b) "engag[ing] in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding;" (c) "impos[ing] credit costs expressly prohibited by Federal and Pennsylvania law, and fail[ing] to comply with the Fair Credit Act which is a per se violation of the Trade Practices Law;" (d) "misrepresent[ing] to Innovative and its guarantors that the loan would be beneficial when in fact it was not; and Ricoh knew it was not"; and (e) "misrepresent[ing] characteristics or benefits of the loan."[126]

Ricoh moves to dismiss all claims brought under the Fair Credit Act and the Trade Practices Law, arguing (1) "[Innovative and its guarantors] lack standing to bring a Trade Practices claim because they have failed to allege they purchased goods primarily for 'personal, family, or household purposes'"; and (2) "[Innovative and its guarantors] further fail to plausibly plead facts showing reliance, particularly with respect to oral representations alleged in the context of a fully executed agreement."[127] As we explain in our Fair Credit Act analysis above, Innovative did not purchase goods from Ricoh primarily for personal, family, or household purposes, and thus its claims under the Trade Practices Law, including the Fair Credit Act counterclaims, must be dismissed.

**5.      Innovative fails to plead Ricoh tortiously interfered with their prospective contractual relationship with Wells Fargo.**

Innovative fails to plead Ricoh tortiously interfered with a prospective contractual relationship with Wells Fargo.  Innovative alleges it acquired financing for an order through

Wells Fargo and attaches Wells Fargo's Rate Card and an invoice to Wells Fargo for the copiers.[128]  Innovative alleges Ricoh tortiously interfered with its prospective contractual relationship with Wells Fargo by insisting Innovative finance its orders through a Ricoh line of credit, rather than a Wells Fargo loan.  This conduct, as pleaded, does not amount to tortious interference.

To state a claim for tortious interference under Pennsylvania law, Innovative must plead: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the [counterclaim-plaintiff], specifically intended to harm the existing relation or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the [counterclaim-plaintiff]; and (4) the occasioning of actual legal damage as a result of the defendant's conduct."[129]  "In determining whether a defendant's conduct was without privilege or justification, 'the sole dispute is whether [the] conduct is 'improper.'"[130]  "What is or is not privileged conduct in a given situation is not susceptible of precise definition, but, generally, conduct that is sanctioned by the rules of the game which society has adopted is privileged."[131]  Our Court of Appeals has explained, "[o]ur cases accord substantial deference to defendants whose conduct, despite its conflict with plaintiff's interest, protects and existing legitimate business concern."[132]

Innovative does not plead Ricoh acted "without privilege or justification" in insisting the order be financed through a Ricoh line of credit.  Innovative does not allege any action by Ricoh in connection with Wells Fargo we could construe as improper.  Ricoh did not contact Wells Fargo or otherwise attempt to interfere with Wells Fargo's decision to extend Innovative a loan.  Ricoh simply insisted Innovative finance its purchase of equipment through a Ricoh line of credit.  We dismiss this claim without prejudice.

**C.**     **We dismiss the declaratory judgment claim as duplicative of the breach of contract claim.**

Innovative asks us to declare: (1) Ricoh "has violated the terms of the Dealer Agreement and 2018 Installment Agreement;" (2) "as a result of the violations . . . Ricoh has breached the Dealer Agreement and the 2018 Installment Agreement;" and (3) "as a result of . . .Ricoh's breach, the Dealer Agreement, 2018 Installment Agreement, First Forbearance Agreement and Second Forbearance Agreement and Guarantee Agreements . . . are rescinded;" and (4) Innovative and the Guarantors are not liable for any finance charges, interest or other amounts imposed by . . . Ricoh."[133]   Ricoh moves to dismiss Innovative's declaratory judgment claim arguing the declaratory judgment counterclaim is duplicative of the breach of contract counterclaim.   We dismiss Innovative's counterclaim for declaratory judgment because, as discussed above, Innovative has not pleaded a violation or breach of the Dealer Agreement or the 2018 Installment Agreement.

The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[134] We consider four factors when determining whether to grant declaratory relief: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which give rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies."[135] While Federal Rule of Civil Procedure 57 states "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate,"[136] our Court of Appeals encourages courts to "dismiss

[Declaratory Judgment Act] claims 'when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation.'"[137]

Both the breach of contract counterclaim and the declaratory judgment counterclaim demand judgment against Ricoh for Ricoh's alleged breaches of the Dealer Agreement and the 2018 Installment Agreement.  Innovative alleges Ricoh breached the Dealer Agreement by withholding the line of credit and equipment orders and breached the 2018 Installment Agreement by demanding payment before the contract became effective; the same facts Innovative relies on in its demand for declaratory judgment[138] Although Innovative's breach of contract claim does not address the 2019 Installment Agreement, Second Forbearance Agreement, or Personal Guaranties, its theory for rescinding these agreements is based on Ricoh's alleged breach of contract of the Dealer Agreement and 2018 Installment Agreement.[139] Innovative's declaratory judgment counterclaim is identical to its breach of contract counterclaim. Because Innovative's declaratory judgment counterclaim is duplicative of its breach of counterclaim, which we dismissed for its failure to plead a violation of the Dealer Agreement or 2018 Installment Agreement, we dismiss Innovative's declaratory judgment counterclaim.

## III.   Conclusion

We grant Ricoh's motion to dismiss the counterclaims as uncontested and alternatively, on the merits.

---

[1] We recite these facts from the Counterclaim and from its attached exhibits, which more accurately define the parties' relationship. ECF Doc. No. 11. *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

[2] ECF Doc. No. 11-1.

3 ECF Doc. No. 1 ¶¶ 41-42. Mr. Frazier "unconditionally guarantee[d] . . . the prompt payment of any and all indebtedness or obligations of ever kind or nature, now or hereafter owing by [Innovative] to [Ricoh]…." *Id.* ¶ 43; ECF Doc. No. 1-3.

4 ECF Doc. No. 11-1.

5 *Id.* at 12-13, ¶ 19.

6 *Id.* at 5, ¶ 10.

7 *Id.* at 3, ¶ 6.

8 *Id.* at 5, ¶ 10.

9 *Id.* at 14, ¶ 21. The parties recognize the Dealer Agreement has a contractually binding *force majeure* clause. ECF Doc. No. 11 ¶ 5.

10 ECF Doc. No. 11 ¶ 9 (citing ECF Doc. No. 11-6).

11 *Id.* ¶¶ 10-11.

12 *Id.* ¶¶ 12-13.

13 *Id.* ¶¶ 14-15.

14 *Id.* ¶ 17.

15 *Id.* ¶ 18.

16 *Id.*

17 *Id.* ¶ 20.

18 *Id.* ¶ 17; ECF Doc. No. 1 ¶¶ 46-47; ECF Doc. No. 1-4.

19 ECF Doc. No. 11 ¶ 19.

20 ECF Doc. No. 1-1 at 4, ¶ 15.

21 *Id.* at 1, ¶ 1.

22 *Id.* at 4, ¶ 14.

23 ECF Doc. No. 11 ¶¶ 21, 34. Ricoh invoiced Innovative $309,545.76 from July 2018 through December 2018. *Id.* ¶ 34.

[24] *Id.* ¶¶ 20, 23.

[25] *Id.* ¶ 24.

[26] *Id.* ¶ 25; ECF Doc. No. 1-5.

[27] ECF Doc. No. 1-5.

[28] ECF Doc. No. 11 ¶ 26.

[29] *Id.* ¶ 27.

[30] *Id.*

[31] *Id.* ¶ 28.

[32] ECF Doc. No. 1 ¶ 35; ECF Doc. No. 1-2.

[33] ECF Doc. No. 1 ¶ 36; ECF Doc. No. 1-2.

[34] ECF Doc. No. 1 ¶¶ 32-39.

[35] *Id.* ¶ 59; ECF Doc. No. 1-6.

[36] *Id.*

[37] ECF Doc. No. 1-7.

[38] ECF Doc. No. 1 ¶ 60.

[39] ECF Doc. No. 1 ¶ 62; ECF Doc. No. 1-7.

[40] ECF Doc. No. 1-7 at 1-3.

[41] *Id.* at 2-3.

[42] ECF Doc. No. 11 ¶¶ 70-77 (citing ECF Doc. No. 11-1 at 14, ¶ 21); ECF Doc. No. 1 ¶ 77. Innovative alleges Ricoh caused these delays.

[43] ECF Doc. No. 11 ¶¶ 29, 78; ECF Doc. No. 1 ¶ 78;

[44] ECF Doc. No. 11 ¶ 30.

[45] *Id.* ¶ 31.

---

[46] ECF Doc. No. 1.

[47] ECF Doc. No. 11.

[48] ECF Doc. No. 11 ¶ 57.

[49] *Id.* at 27, ¶ 40.

[50] ECF Doc. No. 18.

[51] *Id.* at 2-4.

[52] "In deciding a 12(b)(6) motion, a court looks only to the facts alleged in the [counterclaims] and [their] attachments without reference to other parts of the record." *Bray v. Dewese*, No. 07-4011, 2008 WL 623824, at *1 (E.D. Pa. Mar. 6, 2008) (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)). "The same standard governs a court's review of a motion to dismiss a counterclaim." *Barnes v. Allstate Prop. & Cas. Ins. Co.*, No. 12-3418, 2013 WL 592207, at *2 (E.D. Pa. Feb. 15, 2013) (citing *Gen. Motors Corp. v. New A.C. Chevrolet, Inc*., 263 F.3d 296, 324-25 (3d Cir. 2001)). "[A]ll allegations in the counterclaim and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Am. Tel. & Tel. Co. v. Geriatric Med. Ctrs. Inc.*, No. 90-6239, 1991 WL 53871, at *1 (E.D. Pa. Apr. 8, 1991). We consider allegations as true for purposes of resolving this motion. *See Kost v. Kozakiewicz*, 1 F. 3d 176, 183 (3d Cir. 1993).

[53] Loc. R. Civ. P. 7.1(c); There are numerous examples of cases where the court has cited the failure to respond as the determining factor in granting a motion. *See e.g. McCracken v. Lancaster City Bureau of Police*, No. 06-4958, 2007 WL 551511, at *1 (E.D. Pa. Feb. 15, 2007) (Judge Stengel chose to "grant defendants uncontested motion under Local Rule of Procedure 7.1(c)" because plaintiff failed to respond to defendant's motion to dismiss); *Imani v. U-Haul Int'l*, No. 07-2231, 2007 WL 2595564, at *1 n.1 (E.D. Pa. Sept. 4, 2007) ("Since Plaintiff has failed to file a response within 14 days after that date as required by Local Rule of Civil Procedure 7.1(c), the court will exercise its authority to grant Defendants' motion as uncontested.").

[54] *Stewart v. United States*, No. 17-3691, 2018 WL 899110, at *4 (E.D. Pa. Feb. 15, 2018) (Judge Bartle dismissed crossclaims where no response filed).

[55] Loc. R. Civ. P. 7.1(c); *see H2L2 Architects/Planners, LLC v. Tower Invs., Inc*., No. 12-6927, 2013 WL 373281, at *3 n.1 (E.D. Pa. Jan. 31, 2013) ("Local Rule 7.1(c) affords parties fourteen days to respond to a motion to dismiss.").

[56] ECF Doc. No 18-1 at 18.

[57] *Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299, 316 (E.D. Pa. 1992).

[58] *Id.* at 317.

[59] *Id.*

[60] *Id.*

[61] *eds Adjusters, Inc. v. Comput. Scis.. Corp.,* 818 F. Supp. 120, 121 (E.D. Pa. 1993).

[62] *Bohm v. Com. Union Bank of Tenn.*, 794 F. Supp. 158, 161 (W.D. Pa. 1992).

[63] No. 00-597, 2000 WL 876728, at *1 (E.D. Pa. June 29, 2000).

[64] *Id.*

[65] *Id.*

[66] *Id.* at *12.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] *eds Adjusters, Inc.*, 818 F. Supp. at 120.

[71] *Id.* at 122.

[72] *Id.*

[73] *Id.* at 120.

[74] *Id.* at 122.

[75] *Id.*

[76] An impairment of collateral defense may be applicable "[i]f the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in the collateral." 13 Pa. Stat. and Cons. Stat. Ann § 3605(e) (West 1992).  The obligation of the guarantor is then discharged to the extent of the impairment. *Id.*  "Impairment" of the value of collateral may occur from: "the failure to obtain, or maintain, perfection or recordation of the interest in collateral;" "release of collateral without substitution of collateral of equal value"; "failure to perform a duty to preserve the value of collateral owed . . . to a debtor or surety or other person secondary liable"; or "failure to comply with applicable law in disposing of collateral." *Id.* § 3605(g)(1). Extensions of the due date of a debt generally do

not constitute an impairment and will result in discharge "only to the extent the surety proves that the extension caused loss." *Id.* § 3605 cmt. 4. A party is not discharged if it "consents to the event or conduct that is the basis of the discharge'; or "the instrument or a separate agreement of the party provides for waiver of discharge . . . either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral." *Id.* § 3605(i). The burden of proving impairment falls on the party arguing for discharge. *Id.* § 3506(f). The Personal Guaranties provide both consent to events or conduct which may be the basis of discharge and contain general language waiving defenses based on impairment of collateral.

[77] ECF Doc. No. 11 ¶ 24.

[78] *Cosby v. Am. Medica, Inc.*, 197 F. Supp. 3d 735, 739 (E.D. Pa. 2016) (quoting *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa.*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006)).

[79] *Pannetta v. Milford Chrysler Sales, Inc.*, No. 14-5680, 2015 WL 1296736, at *4 (E.D. Pa. Mar. 23, 2015) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)); *see also ALA, Inc. v. CCAIR, Inc.*, 29 F. 3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.").

[80] ECF Doc. No. 11-1 at 5, ¶ 10.

[81] *Id.*

[82] *Id.*

[83] ECF Doc. No. 11 ¶ 24.

[84] ECF Doc. No. 1-1.

[85] *Force-Majeure Clause, Black's Law Dictionary* (11th ed. 2019).

[86] *Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co.*, 53 A.3d 53, 61 (Pa. Super. Ct. 2012) (citing John Edward, Jr., *Murray on Contracts* 639 (1990)) (emphasis added).

[87] 30 Richard Lord, *Williston on Contracts* § 77:31 (4th ed. 2008).

[88] ECF Doc. No. 1-1 at 2, ¶ 1.

[89] *Id.* at 4, ¶15.

[90] ECF Doc. No. 11 ¶ 20.

[91] ECF Doc. No. 18 at 2.

92 ECF Doc. No. 11. Innovative references the Dealer Agreement, 2018 Installment Agreement, First Forbearance Agreement, 2019 Installment Agreement, Second Forbearance Agreement, and Personal Guaranties. *Id.*

93 *Weissberger v. Meyers*, 90 A.3d 730, 735 (Pa. Super. 2014).

94 Fed. R. Civ. P. 9(b).

95 *Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

96 *Id.* (citing Fed. R. Civ. P. 9(b)).

97 ECF Doc. No. 11 ¶¶ 38-44.

98 *Id.* ¶¶ 39-40.

99 *Id.* ¶¶ 42-43.

100 *Id.* ¶ 43.

101 *Id.* ¶ 34.

102 *Id.* ¶ 23.

103 Ricoh seeks to collect on obligations allegedly owed by Innovative and as guaranteed by Ms. Burton, Ms. Frazier, and Mr. Frazier.  As with their common law claims, the Guarantors cannot plead a loss and thus do not have standing to assert an affirmative claim for relief.  But they are subject to Ricoh's collection effort.  They may be able to assert defenses which can set-off or avoid liability.  But they cannot recover damages when they have not pleaded a loss.

104 *Id.* ¶ 55.

105 ECF Doc. No. 11 ¶ 46.

106 *Id.* ¶ 53.

107 *Id.* ¶¶ 49, 51.

108 ECF Doc. No. 18 at 3.

109 73 Pa. Stat. and Cons. Stat. Ann. § 2270.5 (West 2000); *see also Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013) ("the [Fair Credit Act] does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 P.S. § 201-9.2, the remedial provision of the [Trade Practices Law], to obtain relief.").

[110] *Benner,* 917 F. Supp. 2d at 359 (citing 73 Pa. Stat. and Cons. Stat. Ann. § 201-9.2 (West 2000)).

[111] 73 Pa. Stat. and Cons. Stat. Ann. § 201-9.2 (West 2000).

[112] *Id*. § 2270.3.

[113] *Hinchliffe v. Option One Mortg. Corp.,* No. 08-2094, 2009 WL 1708007, at *3 (E.D. Pa. June 16, 2009).

[114] No. 07-5410, 2009 WL 650244, at *2 (E.D. Pa. Mar. 13, 2009).

[115] *Id.*

[116] *Id.*

[117] *Id.* at *3.

[118] *Id.*

[119] *Id.*

[120] *Id.* at *4.

[121] *Id.* at *1.

[122] *Id.* at *2.

[123] *Id.* at *4.

[124] *Id.*

[125] *Id.*

[126] *Id.* ¶¶ 60-61.

[127] ECF Doc. No. 18 at 3.

[128] *Id.* ¶ 66.

[129] *Remick v. Manfredy*, 238 F.3d 248, 263 (3d Cir. 2001).

[130] *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 321 F. Supp. 3d 503, 517 (M.D. Pa. 2018) (quoting *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978)).

[131] *Id.* (citations omitted) (quotations omitted).

[132] *Id.* at 518 (citing *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 665 (3d Cir. 1993)).

[133] ECF Doc. No. 11 ¶¶ 71-74.

[134] *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 231 (E.D. Pa 2019) (quoting 28 U.S.C. § 2201(a) (2020)).

[135] *In re Lincoln Nat'l COI Litig.,* 269 F. Supp. 3d 622, 639 (E.D. Pa. 2017).

[136] Fed. R. Civ. P. 57.

[137] *Landau v. Viridian Energy PA LLC,* 223 F. Supp. 3d 401, 421 (E.D. Pa. 2016).

[138] ECF Doc. No. 11 ¶¶ 18-25.

[139] *Id.* ¶ 73.